NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0391n.06

Case Nos. 23-1335/1403

FILED
Sep 19, 2024
KELLY L. STEPHENS, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD, | ) | |
| Petitioner / Cross - Respondent, | ) | |
| | ) | |
| | ) | |
| LOCAL 40, RN STAFF COUNCIL, OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, AFL-CIO, | ) ) ) | ON PETITION FOR ENFORCEMENT AND CROSS-PETITION FOR REVIEW OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD |
| Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | OPINION |
| MCLAREN MACOMB, | ) | |
| Respondent / Cross - Petitioner. | ) | |

Before: GIBBONS, BUSH, and LARSEN, Circuit Judges.

PER CURIAM. McLaren Macomb ("McLaren" or "the Hospital") furloughed eleven of its employees without first bargaining with their union. The Hospital then communicated directly with those employees to discuss the terms of their severance agreements, also without consulting their union. The General Counsel of the National Labor Relations Board ("NLRB") issued a Complaint against McLaren, alleging that the Hospital's actions violated Section 8(a)(5) and (1) of the National Labor Relations Act ("NLRA" or "the Act"). The Board agreed, ordering McLaren to reinstate the furloughed employees and compensate them for any pecuniary harms resulting from the unfair labor practices. On appeal, the Hospital claims that the Board's factual findings are unsupported by substantial evidence, and that its legal conclusions are erroneous. We hold that substantial evidence supports the Board's conclusion that McLaren violated

Section 8(a)(5) and (1) when it failed to bargain with the union and dealt directly with its employees. In light of those violations, we find that the evidence demonstrates that the Hospital's proffer of severance agreements violated Section 8(a)(1). We therefore enforce the Board's Order in full.

## I.

### A. Factual Background

McLaren employs approximately 2300 workers at Mount Clemens Hospital, located in Mount Clemens, Michigan. In August 2019, 351 of the Hospital's employees (the "Unit" or "Bargaining Unit") voted to unionize. The NLRB certified the Unit in December of that year, with Local 40 RN Staff Council, Office and Professional Employees International Union, AFL-CIO ("Local 40" or the "Union") as the Unit's exclusive collective-bargaining representative. McLaren did not initially recognize Local 40 as the Unit's representative, instead seeking review of the Board's certification decision. But once that request for review was denied in July 2020, the Hospital recognized Local 40 and agreed to negotiate with the Union. The parties met for more than a dozen bargaining sessions in 2020 and 2021.

The events giving rise to this dispute began with the onset of the COVID-19 pandemic. As the virus spread, federal, state, and local authorities issued regulations that, among other things, prohibited the Hospital from performing certain elective and outpatient procedures, and barred nonessential employees from working. In response to those orders, the Hospital temporarily furloughed eleven of its service employees who greeted patients and visitors in McLaren's surgery center—a role that it deemed nonessential. All the furloughed employees were represented by the Union. The parties do not challenge the lawfulness of these temporarily furloughs.

In June 2020, McLaren decided to lay off the employees it had furloughed. It did not

involve Local 40 in its decision to terminate the furloughed employees, or in its discussion of any severance agreements. Instead, the Hospital contacted the affected employees directly and informed them that their furlough was permanent. It presented the employees with severance agreements prohibiting them from "initiat[ing] or fil[ing] any such claim regarding" their employment or termination. CA6 R. 19, Admin. R., at 220. The agreements contained the following provisions:

> **Confidentiality Agreement.** The Employee acknowledges that the terms of this Agreement are confidential and agrees not to disclose them to any third person, other than spouse, or as necessary to professional advisors for the purposes of obtaining legal counsel or tax advice, or unless legally compelled to do so by a court or administrative agency of competent jurisdiction.
> . . .
>
> **Non-Disclosure.** At all times hereafter, the Employee promises and agrees not to disclose information, knowledge or materials of a confidential, privileged, or proprietary nature of which the Employee has or had knowledge of, or involvement with, by reason of the Employee's employment. At all times hereafter, the Employee agrees not to make statements to Employer's employees or to the general public which could disparage or harm the image of Employer, its parent and affiliated entities and their officers, directors, employees, agents and representatives.

*Id.* at 221. McLaren promised to pay a severance payment to any employee who signed the agreement. But if the employee breached the agreement, the Hospital was entitled to "seek and obtain injunctive relief in any court of competent jurisdiction," and the employee would be required to pay the Hospital "actual damages, and any costs and attorney fees that are occasioned by the violation." *Id.* Local 40 first learned of these agreements when a terminated employee informed the Union of the furloughs via email.

**B. Procedural Background**

Local 40 filed an unfair-labor-practices charge with the NLRB, and the NLRB's General Counsel issued a Complaint based on that charge in 2021. The Complaint alleged that McLaren

violated Section 8(a)(5) and (1) of the NLRA by "deal[ing] directly with its employees" when negotiating their severance agreements, and by permanently furloughing its employees "without affording [the Union] a meaningful opportunity to bargain." *Id.* at 197–98. The Complaint further states that the non-disclosure and confidentiality provisions in the severance agreements "interfere[e] with, restrain[], and coerc[e] employees in the exercise of" their Section 7 rights, in violation of Section 8(a)(1). *Id.* at 198.

An administrative law judge ("ALJ") determined that McLaren committed failure-to-bargain and direct-dealing violations under Section 8(a)(5) of the Act. However, the ALJ held that the terms of the Hospital's severance agreements did not violate Section 8(a)(1), applying the standard set forth in *Baylor University Medical Center*, 369 NLRB No. 43 (2020) ("*Baylor*") and *International Game Technology*, 370 NLRB No. 50 (Nov. 4, 2020) ("*IGT*"). In *Baylor* and *IGT*, the Board held that including confidentiality and non-disclosure provisions in a severance agreement is lawful, provided that the agreement is not "proffered . . . under circumstances that would reasonably tend to interfere with the separating employees' exercise of their own Section 7 rights or those of their coworkers." *IGT*, 370 NLRB No. 50, slip op. at 2 (citing *Baylor*, 369 NLRB 43, slip op. at 2 & n.6). Applying that standard here, the ALJ determined that the confidentiality and non-disclosure provisions in McLaren's severance agreements, which were "voluntary, only offered to separated workers, and did not impact their previously accrued benefits," were lawful. CA6 R. 19, Admin. R., at 391.

Both parties filed exceptions to the ALJ's decision. The Hospital argued that "the unforeseen circumstances brought on by COVID-19" relieved it of its duty to bargain under the Act and justified its direct communication with the furloughed employees. *Id.* at 344. The NLRB's General Counsel challenged the ALJ's analysis of the severance agreements under

Section 8(a)(1), claiming that the Board should overturn *Baylor* and *IGT* and find the severance agreements unlawful.

In a February 2023 decision, the Board adopted the ALJ's findings that McLaren committed failure-to-bargain and direct-dealing violations. *McLaren Macomb*, 372 NLRB No. 58, slip op. at 2 (Feb. 21, 2023). But with respect to the alleged Section 8(a)(1) violation, the Board reversed the ALJ's finding that the severance agreements offered by the Hospital were lawful. The Board declined to apply *Baylor* and *IGT*'s standard requiring additional "unlawful coercive circumstances," explaining that those cases took a "severely constricted view of Section 7 rights" that is inconsistent with the "wide protection afforded employees" under the Act. *Id.* at 5–7. According to the Board, *Baylor* and *IGT* reversed "long-settled precedent" holding that a severance agreement's terms can "reasonabl[y] tend[] to interfere with, restrain, or coerce the exercise of employee rights under Section 7 of the Act." *Id.* at 1. So, in overruling *Baylor* and *IGT*, the Board emphasized that it was "restor[ing] prior law . . . which examine[s] the facial language of proffered severance agreement[s]" in determining whether a Section 8(a)(1) violation occurred. *Id.* at 12.

To remedy the violations, the Board ordered the Hospital to cease and desist from furloughing its employees without first bargaining with the Union, and from directly dealing with those employees. The Board further directed the Hospital to rescind the permanent furloughs, reinstate the affected employees, and compensate them for pecuniary harms resulting from the furlough.

Member Marvin Kaplan dissented in part. He agreed that McLaren violated Section 8(a)(5) and (1) by failing to bargain with Local 40 and directly dealing with its employees, and that the proffer of severance agreements was unlawful when viewed in light of those unfair labor practices. However, Member Kaplan explained that the Majority erred in overruling *Baylor*

and *IGT*, and that none of the Board's prior decisions hold that an employer with no suggested "proclivity to violate the Act" commits an unfair labor practice by merely "proffering a severance agreement with language that could possibly be interpreted as limiting Section 7 rights." *Id.* at 15.

The Board petitions this court for enforcement of its Order pursuant to Section 10(e) of the Act, codified at 29 U.S.C. § 160(e). McLaren filed a cross-petition for review pursuant to § 160(f). A motions panel granted Local 40's motion to intervene as a successful charging party in a Board matter under Federal Rule of Appellate Procedure 15(d). *Ozburn-Hessey Logistics, LLC v. NLRB*, 939 F.3d 777, 783–84 (6th Cir. 2019).

**II.**

Our review of a Board decision is "quite limited." *Bannum Place of Saginaw, LLC v. NLRB*, 41 F.4th 518, 523 (6th Cir. 2022) (quoting *Caterpillar Logistics, Inc. v. NLRB*, 835 F.3d 536, 542 (6th Cir. 2016)). We defer to the "Board's findings of fact, reasonable inferences from the facts, and applications of law to the facts if they are supported by substantial evidence on the record considered as a whole." *Hendrickson USA, LLC. v. NLRB*, 932 F.3d 465, 469 (6th Cir. 2019). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bannum Place of Saginaw*, *LLC*, 41 F.4th at 523 (quoting *Caterpillar Logistics*, 835 F.3d at 542).

We apply de novo review to the NLRB's interpretation of the NLRA, though we pay "'careful attention' to the judgment of the agency to inform that inquiry." *Rieth-Riley Constr. Co., Inc. v. NLRB*, __ F.4th __, No. 23-1899, 2024 WL 3811837, at *3 (6th Cir. Aug. 14, 2024) (quoting *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024)). Although we are "slow to overturn an administrative decision," *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112 (1956), we may not simply "rubberstamp" an administrative decision that is "inconsistent with a statutory

mandate or that frustrate[s] the congressional policy underlying a statute." *NLRB v. Brown*, 380 U.S. 278, 291 (1965).

## III.

The parties' cross-petitions present three issues for our consideration: whether substantial evidence supports the Board's decision that McLaren violated Section 8(a)(5) and (1) of the Act when it, first, failed to bargain with the Union and, second, dealt directly with the furloughed employees. The third issue is whether the severance agreements' confidentiality and non-disclosure provisions rendered those agreements unlawful under Section 8(a)(1). We discuss each issue in turn.

## A.

McLaren first challenges the Board's conclusion that the Hospital violated Section 8(a)(5) and (1) when it failed to bargain over its decision to permanently furlough its employees. The NLRA provides that an employer who "refuse[s] to bargain collectively with the representatives of his employees" commits an unfair labor practice. 29 U.S.C. § 158(a)(5). By requiring an employer to engage in collective bargaining, the statute imposes an obligation on the employer to "meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment." *Id.* § 158(d). "[I]f an employer unilaterally alters certain terms of employment without bargaining, it violates § 8(a)(5)." *NLRB v. Metro Man IV, LLC*, __ F.4th __, No. 23-1472, 2024 WL 3982681, at *4 (6th Cir. Aug. 29, 2024).

Federal courts and the Board have recognized that layoffs or furloughs are "terms and conditions" of employment that are subject to mandatory bargaining. *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 210 (1964) ("The words [terms and conditions of employment] . . . plainly cover termination of employment."); *NLRB v. Plymouth Stamping Div.*, 870 F.2d 1112,

1115 (6th Cir. 1989) ("[C]ertain decisions, 'such as the order of succession of layoffs and recalls, production quotas, and work rules,' are at the core of the employer-employee relationship properly subject to mandatory bargaining.'"); *Thesis Painting, Inc.*, 365 NLRB No. 142, slip op. at 1 (Oct. 13, 2017) ("Layoffs are a mandatory subject of bargaining under Section 8(d) and 8(a)(5) of the Act."); *Times Union*, 356 NLRB 1339, 1348 (2011) ("It is clear, however, that the decision to lay off employees and the effects of such a decision are mandatory subjects of bargaining."). Generally,[1] then, an employer that fails to bargain with its employees' union before implementing furloughs violates Section 8(a)(5).[2]

Substantial evidence supports the Board's conclusion that the Hospital failed to bargain with the Union over the permanent furloughs. The ALJ found that Local 40 was "neither notified nor included in [McLaren's] discussions" with its employees about the furloughs. *McLaren Macomb*, 372 NLRB No. 58, slip op. at 18. McLaren does not dispute that it failed to bargain with the Union, but instead provides four reasons why it believes it was not required to do so. None of them persuade.

The Hospital's first three arguments—that its bargaining obligation was excused because (1) it had not formally recognized the Union as its employees' bargaining representative; (2) it was following its "unchanged past practice" in implementing the furloughs; and (3) Local 40 did not request to bargain—fail because they were not properly preserved for our review. McLaren Br. at

---

[1] There are some exceptions to the bargaining requirement. When an employer implements layoffs for reasons "wholly apart from the employment relationship," such as when terminating employees is a necessary consequence of closing the employer's business, there may be no duty to bargain. *See First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 677 (1981). McLaren does not rely on this exception in its challenges to the Board's decision, so we address it no further.

[2] "Because a refusal to bargain necessarily interferes with bargaining, an employer who violates section 8(a)(5) also, derivatively, violates section 8(a)(1)." *NLRB v. Ingredion Inc.*, 930 F.3d 509, 513 (D.C. Cir. 2019) (internal citation and quotation marks omitted).

22–23, 40–43. Under Section 10(e) of the Act, "[w]e lack jurisdiction to hear any 'objection that has not been urged before the Board, its member, agent, or agency' unless 'the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.'" *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. NLRB*, 844 F.3d 590, 598 (6th Cir. 2016) (quoting 29 U.S.C. § 160(e)). An objection was "urged before the Board" if it was "raised with sufficient specificity in briefing prior to the Board's decision, or in a subsequent motion for reconsideration." *Id.* at 598–99; *see also NLRB v. Watson-Rummell Elec. Co.*, 815 F.2d 29, 31 (6th Cir. 1987) (noting that the "specificity required for a claim to escape the bar imposed by § 10(e) is that which will 'apprise the Board of an intention to bring up the question'").

McLaren did not file a motion to reconsider the Board's decision, so we look to its exceptions to the ALJ's decision, responses to the General Counsel's exceptions, and reply brief to determine which, if any, of its arguments were properly preserved. The Hospital did not mention any of the above arguments in its exceptions to the ALJ's decision or its response to the General Counsel's filing. Rather, McLaren's exceptions to the Board centered around the claim that it was not required to bargain over the furloughs because of emergency circumstances arising from COVID-19. Because the Board could not "bring[] its expertise to bear on the resolution of" claims that McLaren did not bring to its attention, we will not consider those claims for the first time on appeal. *NLRB v. U.S. Postal Serv.*, 833 F.2d 1195, 1203 (6th Cir. 1987).

As its only surviving argument, the Hospital claims that it was not required to bargain because of "the impact of COVID-19" on its operations. McLaren Br. at 43. It explains that it was forced to "dramatically change the focus of its operations" in response to the "severe crisis" brought on by the pandemic, and that as a result, it "did not have work for certain of its nonessential employees." *Id.* at 43, 45. The Board acknowledges that COVID-19 posed a "significant crisis in

the health care industry" that undoubtedly impacted McLaren's work. NLRB Br. at 11. But to be excused from its statutory obligation to bargain, the Board maintains that the Hospital had to show "an economic emergency requiring some prompt response," not an operational emergency. *Id.*

Regardless of whether an operational emergency could serve as a "compelling business justification" for an employer's failure to bargain, McLaren has not demonstrated that exigent circumstances excused its conduct here. *Winn-Dixie Stores, Inc.*, 243 NLRB 972, 974 n. 9 (1979). An employer asserting an exigent circumstance defense must show that because of an emergency, the company was forced to "take immediate action" and was unable to bargain. *Hospital de la Concepcion*, 371 NLRB No. 155, slip op. at 5 (Sept. 29, 2022) (quotation omitted). Here, although the pandemic significantly affected McLaren's operations, the record shows that the Hospital was not prevented from bargaining. McLaren bargained with its nurses' bargaining unit on three separate occasions between March and June of 2020—the same time the Hospital claims it did not have time to meet with the Union to discuss the permanent furloughs. *See* CA6 R. 19, Admin. R., at 147. And despite claiming that it could not contact the Union during the emergency, the Hospital nonetheless agreed to bargain with Local 40 in July 2020—immediately after the Board denied its request for review of the Union's certification. *Id.* at 148. McLaren's willingness to bargain with another union and abrupt recognition of Local 40 discredit any claim that the effects of COVID-19 prevented it from bargaining. Substantial evidence supports the Board's conclusion that McLaren committed an unfair labor practice when it failed to bargain over the permanent furloughs.

**B.**

The Hospital next challenges the Board's conclusion that it violated Section 8(a)(5) and (1) when it dealt directly with the furloughed employees. Section 8(a)(5)'s prohibition on direct

dealing "incorporates by reference § 9(a), which makes the bargaining unit representatives the exclusive representative of the employees 'for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment.'" *Dayton Newspapers, Inc. v. NLRB*, 402 F.3d 651, 661 (6th Cir. 2005) (quoting 29 U.S.C. § 159(a)). As such, an employer that communicates directly with employees about subjects of mandatory bargaining commits a direct dealing violation under § 8(a)(5) and (1). The Board has found a direct dealing violation where an employer "offer[ed] severance terms directly to . . . bargaining unit employees" without first discussing those terms with their union. *Hotel Bel-Air*, 358 NLRB 1527, 1527 (2012), *adopted*, 361 NLRB 898 (2014), *enforced*, 637 F. App'x 4 (D.C. Cir. 2016).

The evidence supports the Board's position that McLaren engaged in direct dealing when it offered the furloughed employees severance agreements without first discussing their severance with Local 40. As with its prior violation, the Hospital does not dispute that it failed to reach out to the Union. Rather, it claims it did not need to discuss the severance agreements with the Union because it did not "create a severance policy, make any changes in its policy, or negotiate with the signatory employees regarding the terms of their severance." McLaren Br. at 41. The Hospital did not raise this argument before the Board, either in its exceptions to the ALJ's decision or its response to the General Counsel's exceptions. We therefore lack jurisdiction over its claim.

Even if properly preserved, the Hospital's argument fails. The Board has made it clear that an employer violates Section 8(a)(5) by communicating with employees in any way that is "likely to erode 'the Union's position as exclusive representative.'" *Allied-Signal, Inc.*, 307 NLRB 752, 753 (1992) (quoting *Modern Merchandising*, 284 NLRB 1377, 1379 (1987)). As such, the Board may find evidence of direct dealing regardless of whether an employer is presenting a new policy or negotiating with employees, as "[d]irect dealing need not take the form of actual bargaining."

*Id.* Even if McLaren did not negotiate with the furloughed employees, it unlawfully "dealt" with them for Section 8(a)(5) purposes when it went behind the Union's back to discuss the terms of their severance. We affirm the Board's conclusion that those communications amounted to unlawful direct dealing.

**C.**

Finally, McLaren claims that the Board erred in concluding that the Hospital's severance agreements violated Section 8(a)(1). Section 7 of the NLRA grants employees the rights to "self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. And under Section 8(a)(1), it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of" their Section 7 rights. *Id.* § 158(a)(1). To determine whether an employer unlawfully interfered with employees' Section 7 rights, we consider "whether the evidence demonstrate[s] that, taken from the point of view of the employees, the reasonable tendency of the employer's conduct or statements is coercive in effect." *Beverly Health & Rehab. Servs., Inc. v. NLRB*, 297 F.3d 468, 476 (6th Cir. 2022) (internal citation and quotation marks omitted).

The Board provided two rationales for its conclusion that McLaren's conduct amounted to a Section 8(a)(1) violation. First, the Board explained that under its decisions in *Baylor* and *IGT*, McLaren's proffer of severance agreements was unlawful because it was "part and parcel of [the Hospital's] unlawful permanent furlough of the 11 employees, and was the product of its unlawful direct dealing with those employees." *McLaren Macomb*, 372 NLRB No. 58, slip op. at 12 n.52. *Baylor* and *IGT* held that an employer does not violate Section 8(a)(1) by presenting employees

with severance agreements containing confidentiality and non-disclosure provisions unless the proffer was made "under any circumstances that would tend to infringe on the separating employees' exercise of their own Section 7 rights or those of coworkers." *Baylor*, 369 NLRB No. 43, slip op. at 2; *IGT*, 370 NLRB No. 50, slip op. at 2 n.7 (finding no Section 8(a)(1) violation for proffer of severance agreements where the employer had no history of "discriminat[ing] against employees for engaging in Section 7 activity").

Alternatively, the Board Majority held that the text of the severance agreements alone violated Section 8(a)(1), overruling *Baylor* and *IGT*. The Majority expressed concern that under *Baylor*, an employer who does not engage in additional coercive conduct is "entirely free" to present a severance agreement with facially unlawful terms. *Id.* at 5. Permitting an employer to present furloughed employees with confidentiality and non-disclosure provisions would violate the "public policy of the Act," as well as conflict with "long-standing precedent" that "carefully scrutinized the language of the severance agreements to determine whether their proffer to employees was unlawful." *Id.* at 7, 11 (citing *Shamrock Foods Co.*, 366 NLRB No. 117 (June 22, 2018); *Clark Distrib. Sys.*, 336 NLRB 747 (2001); *Metro Networks*, 336 NLRB 63 (2001); *Phillips Pipe Line Co.*, 302 NLRB 732 (1991)).

In dissent, Member Kaplan agreed that when considered in context with the Hospital's Section 8(a)(5) violations, McLaren's proffer of the severance agreements interfered with its employees' Section 7 rights under *Baylor* and *IGT*. However, he disagreed with the Board's second rationale for finding a Section 8(a)(1) violation, explaining that the Majority's text-only approach was inconsistent with the meaning of the NLRA and rested on an erroneous reading of Board precedent. *See id.* at 15.

McLaren challenges the Board's decision on multiple fronts. Among other things, the

Hospital claims that the Board decided issues not argued before the ALJ, did not exercise judicial restraint, violated the Hospital's due process rights, ignored relevant provisions of the agreements, and "erroneously overruled *Baylor* and *IGT*" in holding that the "mere proffer of facially neutral confidentiality and non-disclosure provisions in a severance agreement" violates the Act. McLaren Br. at 16–40. McLaren's arguments raise the question whether the Board's text-alone approach is consistent with the NLRA, and whether the Board's analysis comports with the Act's general focus on protecting "workers' rights to join unions and to engage in collective bargaining." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 521 (2018) (internal citation and quotation marks omitted). Also, in light of *Loper Bright Enterprises v. Raimondo*, our circuit has indicated that we no longer owe deference to the agency's interpretation of the Act. *See Rieth-Riley Constr. Co., Inc.*, 2024 WL 3811837, at *3 ("We do not defer to the NLRB's interpretation of the NLRA, but exercise independent judgment in deciding whether an agency acted within its statutory authority." (citing *Loper Bright*, 144 S. Ct. at 2262)).

However, we need not delve into those matters to resolve this case. Of McLaren's objections to the Board's decision, we only exercise jurisdiction over the Hospital's claim that the Board erroneously overruled *Baylor* and *IGT* in finding a Section 8(a)(1) violation.[3] As just explained, the Board held that even under *Baylor* and *IGT*, McLaren's conduct violated Section

---

[3] Because the ALJ found that McLaren's severance agreements did not violate Section 8(a)(1), the Hospital understandably did not advance arguments related to that claim in its exceptions to the Board. But in the NLRB's exceptions to the ALJ's decision, the NLRB's General Counsel argued that the Board should overturn *Baylor* and *IGT* and find the severance agreements unlawful. In response, McLaren claimed that the Board should "reject the General Counsel's request to overturn [*Baylor* and *IGT*]" and noted that the ALJ "correctly applied controlling Board precedent" in upholding the severance agreements. CA6 R. 19, Admin. R., at 348, 349. The Hospital advances the same argument now, through its claims that the Board's decision erroneously overruled *Baylor* and *IGT* and mischaracterized prior precedent. As such, we have jurisdiction over the Hospital's argument that the Board's failure to adhere to precedent was erroneous.

8(a)(1). *McLaren Macomb*, 372 NLRB No. 58, slip op. at 12 n.52. Substantial evidence supports that conclusion. The Hospital violated Section 8(a)(5) and (1) when it failed to bargain with the Union over its employees' permanent furloughs, and when it directly dealt with the furloughed employees. Those violations are exactly the kind of unlawful conduct from which reasonable employees could infer that the Hospital intended to invoke the severance agreements to interfere with the employees' Section 7 rights.

Because McLaren demonstrated its "proclivity to violate the Act" through its failure-to-bargain and direct-dealing violations, we affirm the Board's conclusion that the Hospital's conduct violated Section 8(a)(1) under the standard articulated in *Baylor* and *IGT*. *Id.* at 15. And, having found that McLaren committed an unfair labor practice under the prior standard, we do not address its decision to reverse *Baylor* and *IGT*, or whether it correctly interpreted the NLRA in doing so.[4]

## IV.

We grant the Board's petition for enforcement, deny McLaren's cross-petition for review, and enforce the Board's Order in full.

---

[4] Affirming on this basis does not affect the Board's remedy. The Board ordered McLaren to cease and desist from furloughing employees "without first . . . giving [the Union] an opportunity to bargain," and from directly dealing with its employees. *McLaren Macomb*, 372 NLRB No. 58, slip op. at 13–14. The Hospital was also directed to reinstate the furloughed employees and compensate them for pecuniary harms resulting from its unfair labor practices. *Id.* at 14. Those directives do not depend on the content of the severance agreements. Instead, they address the Hospital's failure to bargain and direct dealing—violations that we find are supported by substantial evidence.